UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
BORIS TYRONE WALKER,

                Petitioner,                  <u>MEMORANDUM & ORDER</u>
                                                    06-CV-1932 (JS)
    -against-

SUPERINTENDENT,

                Respondent.
----------------------------------X
APPEARANCES
For Petitioner:    Boris Tyrone Walker
                    00-A-5966
                    Green Haven Correctional Facility
                    PO Box 4000
                    Stormville, NY 12582-0010

For Respondent:    Marion M. Tang, Esq.
                    Suffolk County District Attorney's Office
                    Criminal Courts Building
                    200 Center Drive
                    Riverhead, NY 11901

SEYBERT, District Judge:

        Petitioner Boris Tyrone Walker ("Walker" or "Petitioner") seeks a writ of habeas corpus under 28 U.S.C. § 2254. For the reasons below, Walker's petition for a writ of habeas corpus is DENIED.

## BACKGROUND

        On May 19, 1999, Petitioner attempted to shoot Tommie Saunds ("Saunds"), Petitioner's estranged girlfriend's male friend. Petitioner approached his girlfriend, Sheila Mooring ("Mooring"), and Saunds while the two were chatting inside a vehicle, pulled out a gun, and attempted to shoot the victim at point-blank range. Saunds exited the vehicle and ran away from Petitioner; Petitioner

pursued the victim on foot and shot at him several more times. Saunds hid underneath an old vehicle at an adjacent yard and, at approximately 12:57 p.m., called the police from his mobile phone. Saunds provided the officer who responded to the scene with Petitioner's description. Saunds later identified Petitioner at a court-ordered lineup.

Wendy Stewart ("Wendy") testified at trial that at approximately 12:45 p.m., she heard a "pop" sound coming from outside her bedroom window. Wendy saw someone run by her window, and also saw Petitioner standing by Mooring holding a gun. Wendy recognized Petitioner as Mooring's boyfriend. The person running continued toward Wendy's van, parked in her driveway. Wendy crouched down on the floor and called 911.

Rodney Stewart, Wendy's brother, also testified that he heard the loud pop sound. Rodney testified that he ran to the window and witnessed Petitioner holding a gun and shooting at Saunds while chasing after Saunds. Petitioner eventually ceased chasing Saunds and fled the scene on a motorcycle.

At approximately 1:02 p.m., after witnessing Petitioner shoot at Saunds, Mooring ran to a nearby laundromat and called 911. Still frightened, Mooring then drove to the Amityville Police Station. Mooring later informed Amityville Police Sergeant Dennis D'Amico that she had been in a car in Copiague, Suffolk County, when Petitioner fired a gun into the vehicle.

At approximately 1:00 p.m., Suffolk County First Precinct Police Officer Robert Carroll received a radio transmission to look for a motorcycle involved in a shooting in Copiague. Officer Carroll later received a second notification from the Amityville Police Department naming Petitioner as the suspect and citing Petitioner's address as 95 Monroe Street, East Massapequa, Nassau County. Officer Carroll proceeded to 95 Monroe Street, where he observed a green and purple motorcycle in the driveway that fit the description of the suspect's motorcycle with the engine still hot. Officer Carroll arrested Petitioner, who was inside the house, and brought him to the First Precinct.

After obtaining a warrant, Detective Kevin English searched Petitioner's residence and discovered items matching descriptions provided by the witnesses, such as a pair of Timberland boots, wet blue jeans, a maroon skull cap, and a motorcycle helmet.

Officer John White photographed the scene of the incident. He noticed a Ford vehicle with a shattered rear passenger window parked on the street, and three live rounds of ammunition and two empty casings near the Ford. Officer White packaged, sealed, and forwarded the ammunition to the crime laboratory for testing. Later that day, Officer White took swabs of Petitioner's hands with a firearms discharge residue kit and forwarded the samples to the laboratory.

On May 21, 1999, Officer Thomas Maher discovered a projectile lodged in the passenger side headrest in the Ford Taurus. Officer Maher forwarded the projectile to the crime laboratory.

Charles Hopkins ("Hopkins"), an expert in the field of firearms identification and microscopic examination, testified that he tested the recovered ballistics evidence on May 14, June 3rd, and June 17 of 1999. Hopkins concluded that the bullets shared the same class characteristics and came from a .25 caliber semi-automatic pistol.

On August 16, 2000, Daniel Burhans ("Burhans"), a forensic scientist with the Suffolk County Crime Laboratory, received a request to analyze the swabs received from Petitioner. The crime laboratory received this same request from the prosecution on May 21, 1999. However, the samples were sent back without testing due to Suffolk County's belief that there would be issues affecting the laboratory's computer system in the year 2000. After receiving the August 16, 2000 requests, Burhans conducted detailed tests and determined that the sample from Petitioner's hand contained a particle of lead, barium, and antimony, a combination that, to date, was unique to gunshot residue.

On August 23, 2000, Petitioner's counsel moved to preclude Officer White and Burhans' testimony. Counsel argued that the prosecutor belatedly disclosed the results of Burhans' testing,

and that the results should have been turned over in response to defense counsel's June 21, 1999 demand for discovery. The prosecutor explained that testing had only recently been completed and that she turned over the materials as soon as they were received. The trial court denied defense counsel's request for preclusion. Thereafter, defense counsel renewed his request for preclusion, and argued that it would take a long time for counsel to get an expert witness. The trial court again declined preclusion but stated that if defense counsel needed further time to prepare, he should let the court know.

On August 24, 2000, defense counsel moved for a mistrial. Counsel stated that he contacted a ballistics expert who stated that he could not assist with gunshot residue analysis, and a trial assistance organization who stated that they would contact counsel if they found an expert. Counsel argued that a mistrial was warranted because Petitioner had been prejudiced by the prosecutor's reference in her opening statement to the gunshot residue test. In response, the prosecutor argued that defense counsel received a copy of the report prior to jury selection, and that she submitted the report shortly after receiving it from the crime laboratory. The trial court denied defense counsel's mistrial motion, and again informed counsel that it would give him "a reasonable amount of time" to prepare and further stated, "if you need assistance in perhaps expediting it, I will be glad to

help in any way I can." (Tr. Aug. 24, 2000 p. 289).

On August 28, 2000, defense counsel stated that he had just received Rosario material related to Burhans' anticipated testimony, and stated that it would be "impossible" for him to proceed because he still had not located an expert. The trial court informed counsel that it would not delay the trial, but it would afford counsel a reasonable time to review the Rosario material. The trial court delayed Burhans' testimony to the next day in order to provide defense counsel with sufficient time to review Burhans' anticipated testimony. The next day, defense counsel again stated that he had received the Rosario material only recently and thus was not prepared to cross-examine Burhans. The prosecutor argued that she submitted Burhans' report prior to jury selection, and had only submitted additional material on August 28th consisting primarily of notes, printouts, and photographs that Burhans brought with him to testify. The trial court ordered that the trial continue after noting that defense counsel had since the previous evening to read the additional materials. At the close of the trial, defense counsel requested a jury charge on the alleged Rosario violation. The trial court declined defense counsel's request.

Petitioner was convicted by a jury in the Supreme Court, Suffolk County, of Attempted Intentional Murder in the Second Degree, Criminal Use of a Firearm in the First Degree, Attempted

Assault in the First Degree, and Criminal Possession of a Weapon in the Second Degree under Indictment No. 1276-99 (hereinafter, "Conviction I").

After another jury trial on a second Indictment, Petitioner was found guilty of one count of Obstructing Governmental Administration in the Second Degree and one count of Harassment in the Second Degree. The charges stemmed from an incident where Petitioner spit at and acted in an assaultive manner toward a prison officer. Petitioner was also found guilty of two counts of Aggravated Harassment of an Employee by an Inmate for Petitioner's act of throwing a milk carton containing feces at two corrections officers on January 4, 2000 under Indictment No. 885-00 (hereinafter, "Conviction II").

On October 17, 2000, Petitioner filed a notice of appeal, and on October 2, 2004, Petitioner filed a direct appeal to the Appellate Division, Second Department. Petitioner argued, <u>inter alia</u>, that Conviction I should be reversed because the trial court failed to grant preclusion, a mistrial, a continuance, or any other sanction for the prosecution's late disclosure of evidence. The Appellate Division affirmed Petitioner's conviction on April 18, 2005. <u>People v. Walker</u>, 17 A.D.3d 610 (N.Y. App. Div. 2d Dep't 2005). On August 31, 2005, the New York State Court of Appeals denied Petitioner's application for leave to appeal. On April 24, 2006, Petitioner filed the instant Petition.

7

DISCUSSION

Petitioner raises only one ground in his Petition for a writ of habeas corpus. Petitioner argues that the trial court violated his due process rights when it denied Petitioner's request for a review of the gun shot residue analysis. Respondent argues that Petitioner's claim is unexhausted, and is in any event without merit. Because the Court finds that Petitioner's claim is without merit, the Court declines to address Respondent's exhaustion arguments. 28 U.S.C. § 2254(b)(2); Alexandre v. Senkowski, 126 Fed. Appx. 7, 10 (2d Cir. 2005) ("[A] federal court may deny a writ of habeas corpus on the merits even if the petitioner has failed to exhaust state remedies . . . .").

I. Standard of Review

The Antiterrorism and Effective Death Penalty Act governs the appropriate standard in determining federal habeas relief. Montalvo v. Annetts, No. 02-CV-1056, 2003 U.S. Dist. LEXIS 22619 at *34 (S.D.N.Y. Dec. 17, 2003); Davis v. Keans, No. 99-CV-0071, 2001 U.S. Dist. LEXIS 57, at *2-3 (E.D.N.Y. Jan 4, 2001). A petitioner seeking federal review of his conviction must adhere to a stringent review standard. Montalvo, 2003 U.S. Dist. LEXIS 22619, at *34. To prevail, a petitioner must demonstrate: that the state court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United

States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d).

"The 'contrary to' and 'unreasonable application' clauses of § 2254(d)(1) have 'independent meaning.'" Montalvo, 2003 U.S. Dist. LEXIS 22619, at *34 (quoting Williams v. Taylor, 529 U.S. 362, 404-05, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000)). A state court decision is "contrary to" Supreme Court precedent if the state court decision (1) "'applies a rule that contradicts the governing law set forth in [Supreme Court] cases,' or if it (2) 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'" Mitchell v. Esparza, 540 U.S. 12, 15, 124 S. Ct. 7, 157 L. Ed. 2d 263 (2003) (quoting Williams, 529 U.S. at 405-06). This standard does not require state court citation of a Supreme Court decision, nor does the state court even need to be aware of Supreme Court precedents, "so long as neither the reasoning nor the result of the state-court decision contradicts them." Mitchell, 540 U.S. at 15 (internal quotation marks and citations omitted).

A decision is an "unreasonable application" of clearly established Supreme Court precedent if "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of

9

petitioner's case." Wiggins v. Smith, 539 U.S. 510, 520-21, 123 S. Ct. 2527, 156 L. Ed. 2d 471 (2003) (internal quotation marks and citations omitted). The Supreme Court has held "unreasonable" to mean "objectively unreasonable" rather than an incorrect application of the law. Id. (citing Williams, 529 U.S. at 409-10). While "some increment of incorrectness beyond error is required . . . the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." Mask v. McGinnis, 252 F.3d 85, 89 (2d. Cir. 2001) (internal quotation marks and citations omitted) (alteration in original). Accordingly, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams, 529 U.S. at 411. It is with this deferential standard in mind that the Court now turns to the merits of Petitioner's case.

II. Petitioner's Claims

Petitioner argues that the trial court deprived him of his due process rights by denying defense counsel's request for expert review. This argument is without merit. At the outset, the record reflects that the trial court did not, in fact, deny defense counsel's request for an independent expert review. Contrarily, the trial court attempted to accommodate defense counsel's request,

and repeatedly stated that it would afford counsel reasonable time to find an expert. The court further stated that it would assist if possible. After defense counsel moved for a mistrial, the trial court correctly noted that counsel was aware that the prosecution had sent Petitioner's specimens for testing, and nonetheless indicated that he was ready for trial. Thus, the Court finds that Petitioner's claim with respect to the trial court's alleged denial of defense counsel's request for a review of the gun shot residue analysis is absolutely without merit.

To the extent that Petitioner reinstates his argument on appeal, that the trial court erred by failing to grant preclusion, a mistrial, a continuance, or any other sanction for the prosecution's late disclosure of evidence, the Court finds that this argument is without merit. It is clear to the court that the trial court was accommodating to defense counsel, defense counsel had not made a meritorious argument warranting any further delay, and defense counsel had sufficient time to obtain a witness. In sum, a review of the record reveals that the trial court did not abuse its discretion in denying defense counsel's request for a mistrial and in failing to impose sanctions on the prosecution. See Miller v. Bennett, No. 98-CV-0661, 2004 U.S. Dist. LEXIS 13752, at *24 (W.D.N.Y. May 22, 2004) (finding that the trial court's "refusal to delay the trial any further to allow petitioner to continue to pursue an expert witness . . . was an appropriate

exercise of the court's discretion.").

Petitioner does not raise any further claims in his petition for a writ of habeas corpus. However, in his traverse, Petitioner maintains that "Respondent failed to oppose his [remaining] claim[s]." Traverse p. 3. Petitioner then lists three of the claims he raised on his appeal; specifically, Petitioner argues: (1) the judgment of conviction on aggravated harassment of an employee by an inmate was improper because Petitioner was not an 'inmate,' as defined by the statute, on the day of the incident; (2) Petitioner received ineffective assistance of counsel at sentencing, and as a result received a harsh and excessive sentence; and (3) the imposition of indeterminate sentences as consecutive with definite sentences for a misdemeanor and a violation was illegal and contrary to New York Penal Law § 70.35. Although Petitioner improperly raises these claims only in his traverse, the Court nonetheless has reviewed them and finds that they are without merit.

On his appeal, Petitioner argued that New York Penal Law § 240.32 encompasses aggravated assault of an employee by "persons convicted of a crime to" and not pretrial detainees. The Appellate Division held, "[t]he defendant's argument that he was not an "inmate" as defined by Penal Law § 240.32 at the time he committed the offenses underlying his conviction of two counts of aggravated harassment of an employee by an inmate is without merit (see Penal

Law § 240.32)." People v. Walker, 17 A.D.3d 610, 611 (N.Y. App. Div. 2d Dep't 2005). The Court agrees.

At the outset, "it is not for us to consider whether the New York courts' construction of N.Y. Penal Law § [240.32] . . . is correct." Ortiz v. N.Y. State Parole in Bronx, N.Y., 586 F.3d 149 (2d Cir. 2009); see also Ponnapula v. Spitzer, 297 F.3d 172, 182 (2d Cir. 2002) ("Our federal constitution does not dictate to the state courts precisely how to interpret their own criminal statutes."). Liberally construed, Petitioner's claim might be that the state court's interpretation of the statute was "so egregious as to be fundamentally unfair" and thus a due process violation. Ponnapula, 297 F.3d at 182 n2. Any such claim would, however, be unexhausted. In any event, such a claim is without merit. There is no language in the statute or in its legislative history suggesting that the legislative intent was to protect employees from assault only by persons convicted of a crime, and not pretrial detainees. Thus, the Court finds that the Appellate Division's holding that the statute's definition of "inmate" included pretrial detainees was not contrary to, or an unreasonable application of, clearly established federal law.

Petitioner's argument that he received ineffective assistance of counsel at sentencing is equally without merit. The Appellate Division rejected this argument, and found that "defense counsel provided meaningful representation at all stages of the

trial, including sentencing." People v. Walker, 17 A.D.3d 610, 611 (N.Y. App. Div. 2d Dep't 2005). The Court agrees.

At the outset, Petitioner makes absolutely no arguments in support of his claim. To the extent that Petitioner intended to set forth the same arguments he made on appeal, the Court finds that these arguments are meritless. Petitioner takes issue with certain strategical decisions made by defense counsel. However, in order to prevail on a claim of ineffective assistance of counsel, Petitioner "must show both that his counsel acted 'outside the wide range of professionally competent assistance,' and that the deficiencies is his counsel's performance were prejudicial to his defense." Jameson v. Coughlin, No. 93-CV-2525, 1994 WL 131185, at *2 (2d Cir. 1994) (quoting Strickland v. Washington, 466 U.S. 668, 690, 691-92, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)). Petitioner has not made such a showing, and instead merely argues that counsel should have raised certain arguments during sentencing that Petitioner claims would have been more effective. The Court finds that Petitioner's arguments do not set forth a claim for ineffective assistance of counsel. "For judges to second-guess reasonable professional judgments and impose on . . . counsel a duty to raise every 'colorable' claim suggested by a client would disserve the very goal of vigorous and effective advocacy . . . . Nothing in the Constitution . . . requires such a standard." Jones v. Barnes, 463 U.S. 745, 754, 103 S. Ct. 3308, 77 L. Ed. 2d 987

(1982).

Finally, Petitioner's claim that the trial court's sentence violated New York Penal Law § 70.35 is moot. Petitioner raised this claim on appeal, Respondent conceded that Petitioner was incorrectly sentenced, and as a result, the Appellate Division ordered

> that the judgment rendered under indictment No. 885/00 is modified, on the law, to the extent that the definite terms of imprisonment of one year on the conviction of obstructing governmental administration in the second degree and 15 days on the conviction of harassment in the second degree shall run concurrently with the indeterminate terms of imprisonment imposed under indictment No. 1276/99; as so modified, the judgment rendered under indictment No. 885/00 is affirmed.

Walker, 17 A.D.3d 610 at 611. Thus, to the extent that Petitioner is attempted to revive his argument on appeal, such a claim would be moot.

III. A Certificate of Appealability is Denied

The Court will not issue a certificate of appealability in this case. Petitioner has not made a substantial showing of the denial of a constitutional right. See 28 U.S.C § 2253. The issues involved in this case are not debatable among reasonable jurors, a court could not resolve the issues in a different manner, and the questions involved do not deserve encouragement to proceed further. See Lucidore v. N.Y. State Div. of Parole, 209 F.3d 107, 112 (2d Cir. 2000).

## CONCLUSION

For the reasons stated above, the Court DENIES Petitioner's writ of habeas corpus in its entirety. The Court will not issue a certificate of appealability. The Clerk of the Court is directed to mark this matter CLOSED.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: Central Islip, New York
December  28 , 2009

16